Case 4:20-cv-03108   Document 47   Filed on 05/26/22 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
May 26, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSHUA LEE CRISWELL and FRANK BROWN, | § § § |
| Plaintiffs, | § § |
| vs. | §  CIVIL ACTION NO. H-20-3108 |
| BOBBY LUMPKIN, *et al.*, | § § § |
| Defendants. | § § |

**MEMORANDUM OPINION AND ORDER**

Joshua Lee Criswell and Frank Brown are inmates in the Texas Department of Criminal Justice. They sued Lorie Davis, as former Executive Director of the TDCJ-Correctional Institutions Division; Bobby Lumpkin, as current Executive Director of the TDCJ-CID; and TDCJ Ellis Unit Warden Kelly Strong under 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to inmate health and safety during the early stages of the COVID-19 pandemic in 2020. (Docket Entry No. 1, pp. 3-5). The court dismissed Davis and Lumpkin from the case, (Docket Entry No. 28), and ordered Strong to respond to the complaint. (Docket Entry No. 29). Strong responded with a motion to dismiss. (Docket Entry No. 40). Having reviewed the complaint, the motion, and all matters of record, the court grants Strong's motion to dismiss and dismisses the complaint with prejudice. The reasons for this ruling are explained below.

**I.   Background**

Criswell and Brown filed a joint complaint in September 2020 challenging TDCJ's response to the COVID-19 pandemic. As to Strong, Criswell and Brown allege that between January and May 2020, Strong failed to provide Ellis Unit inmates with adequate amounts of soap and disinfectant, failed to provide inmates with proper personal protective equipment, "failed to

respect social distancing . . . in offender housing," and failed to isolate inmates who tested positive for the COVID-19 virus from those who tested negative, resulting in the spread of the virus throughout the prison. (Docket Entry No. 1, pp. 4-5). Both Criswell and Brown tested positive for the COVID-19 virus in May 2020, and they allege that they became infected due to Strong's inaction in the face of the pandemic. (*Id.* at 5). After filing multiple grievances with TDCJ, (*Id.* at 7-16), Criswell and Brown filed this civil rights action. They sought both monetary damages and injunctive relief. (*Id.* at 5).

Strong answered the complaint with a motion to dismiss. (Docket Entry No. 40). Neither Criswell nor Brown have responded to Strong's motion, and their time to do so has now expired.

**II.     Legal Standards**

    **A.     Motions to Dismiss**

Strong moves to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(1) is properly granted when the plaintiff lacks standing or when the claims alleged are barred by a state's sovereign immunity. *See High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. 2019) (per curiam) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005)). Because a Rule 12(b)(1) motion challenges the court's jurisdiction, "[w]hen a Rule 12(b)(1) challenge is filed with other Rule 12 motions, the court should address the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra,* 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). In resolving a motion under Rule 12(b)(1), the court may refer to affidavits and other documents outside the pleadings. *See Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996) ("It is well settled in this circuit that '[t]he district court . . . has the power to dismiss [pursuant to

Rule 12(b)(1)] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" (quoting *Voluntary Purchasing Grps, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989))); *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).

A motion to dismiss under Rule 12(b)(6) may be granted when the plaintiff's complaint fails to state a claim upon which relief can be granted. A court reviewing a motion under Rule 12(b)(6) must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (cleaned up). "However, the plaintiff must plead specific facts, not mere conclusory allegations to state a claim for relief that is facially plausible." *Id.* (cleaned up). If the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

Criswell and Brown have attached their TDCJ grievance forms as exhibits to their complaint. These exhibits are part of the complaint "for all purposes." FED. R. CIV. P. 10(c). The court may consider these exhibits for purposes of deciding a motion to dismiss under both Rules 12(b)(1) and 12(b)(6). *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

B.   *Pro Se* **Pleadings**

Because Criswell and Brown are representing themselves, the court construes their filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]"

3

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, self-represented litigants are still required to "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (citations omitted).

**III. Analysis**

    **A. Official Capacity Claims**

        **1. Damages**

To the extent that Criswell and Brown sue Strong in her official capacity for money damages, their claims are barred under the doctrine of sovereign immunity. Sovereign immunity bars actions against a state or state official unless Congress has abrogated such immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Id.* And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App. − Houston [14th Dist.] Aug. 14, 2014, pet. denied) (the Texas Legislature has not waived sovereign immunity for any claim brought under § 1983).

The fact that Criswell and Brown have sued a state employee, rather than the state itself, does not change this analysis. When a government employee is sued in his or her official capacity,

the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity") (citations omitted). Criswell and Brown's claims for money damages against Strong in her official capacity are construed as claims against the State of Texas. Because these claims are barred by sovereign immunity, the court dismisses them with prejudice.

  **2. Injunctive Relief**

    **a. Plaintiff Brown**

To the extent that Brown sues Strong in her official capacity for an injunction to require her to change the Ellis Unit policies on COVID-19 protective measures, his claim is moot. An action becomes moot "when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021) (per curiam) (quoting *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013)). An inmate's transfer to another unit makes his claims for injunctive relief moot. *See, e.g., Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir.2002); *Cooper v. Sheriff, Lubbock Cnty., Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991) (per curiam). But a transfer will not moot a claim for injunctive relief if the inmate can show either a "demonstrated probability" or a "reasonable expectation" that he will be transferred back to the original facility and subjected to the allegedly unconstitutional actions. *See Oliver,* 276 F.3d at 741 (quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982) (per curiam)); *Herman v. Holiday,* 238 F.3d 660, 665 (5th Cir. 2001) (an inmate's transfer from a detention center to a state correctional institution mooted his Eighth Amendment claims for declaratory and injunctive relief because any suggestion of a transfer back to the detention center was too speculative to warrant relief); *Wallace v. Texas Tech Univ.,* 80 F.3d

1042, 1047 n.3 (5th Cir. 1996) ("Jurisdiction over a plaintiff's claims for future relief is appropriate only if a reasonable likelihood exists that the plaintiff will again be subjected to the allegedly unconstitutional actions.").

Brown's complaint alleges that he was harmed by Strong's allegedly unconstitutional actions while he was incarcerated on the Ellis Unit. But Brown has since been transferred to the Hughes Unit and then to the Torres Unit. (Docket Entry Nos. 22, 26). Nothing in the record shows a reasonable likelihood that he will be transferred back to the Ellis Unit. These facts make Brown's claim for injunctive relief against Strong moot, and the court dismisses this claim as moot.

###### b. Plaintiff Criswell

To the extent that Criswell seeks injunctive relief against Strong, his claim fails to meet the requirements for such relief. "A party seeking a permanent injunction must show: (1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). In addition, "[a] permanent injunction is appropriate only if a defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions." *Id.* And when a party is seeking injunctive relief from a state officer acting in his or her official capacity, that party is limited to prospective relief intended to redress ongoing conduct. *See Williams o/b/o J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

The Prison Litigation Reform Act also limits the availability of injunctive relief relating to prison conditions. The PLRA prohibits the court from granting prospective injunctive relief directed to prison conditions "unless the court finds that such relief is narrowly drawn, extends no

6

further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* The moving party has the burden to prove all of the requirements for injunctive relief, including those of the PLRA, before such relief will be granted. *See Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).

Review of the pleadings in this case shows there is no basis upon which to award Criswell the injunction he seeks. Criswell seeks an injunction to require Strong to "house offenders at least 6 ft. apart; respect social distancing; pass out PPE, soap and disinfectant; properly disinfect the facility; properly medically isolate offenders; implement policies to prevent the spread of COVID 19; pass out spray bottles; sell affordable concentrated disinfectant on commissary and spray bottles; [and] properly screen for COVID 19." (Docket Entry No. 1, p. 4). But Criswell does not allege any facts to show that these measures are narrowly drawn, would be effective in controlling the spread of the COVID-19 virus, and would be feasible in a prison setting. In addition, the court notes that the Fifth Circuit has determined that TDCJ's initial response to the COVID-19 pandemic and the policies it adopted in the early months of the pandemic, while not perfect, were appropriate, and these policies have since been revised multiple times in response to new information and experience with the virus.[1] *See Valentine v. Collier*, 993 F.3d 270, 283 (5th Cir. 2021). Criswell does not show that TDCJ's current policies regarding the COVID-19 virus are inadequate or that Strong is failing or refusing to follow those policies. He does not therefore show that his requested relief extends no further than necessary to correct the alleged violation.

---

[1] The most current version of TDCJ's COVID-19 infection control policy, Number B-14.52, was adopted January 26, 2022, and is available at https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhc_infection_control_policy_manual/B-14.52.pdf.

In light of these facts, Criswell's pleadings do not allege facts showing that injunctive relief is necessary to redress an ongoing violation or to prevent future violations or that prospective injunctive relief is appropriate under the PLRA. Criswell's claim for injunctive relief against Strong in her official capacity is dismissed with prejudice under Rule 12(b)(6).

### B. Individual Capacity Claims

#### 1. Deliberate Indifference Claim

Both Criswell and Brown seek damages from Strong based on a claim that she was deliberately indifferent to their serious medical needs, resulting in a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Deliberate indifference is a high standard to meet. *See Farmer v. Brennan*, 511 U.S. 825 (1994). To prove deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Valentine*, 993 F.3d at 281 (quoting *Farmer*, 511 U.S. at 837). "In evaluating a prison's response [to a risk of harm], 'deliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Id.* (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001)). Instead, proof of deliberate indifference "requires a showing of a wanton disregard for the prisoners' safety or recklessness." *Id.* (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *see also Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 198 (5th Cir. 2015) ("[D]eliberate indifference entails 'conduct that reflects complete indifference to risk— when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death.'" (quoting *Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir. 1991) (cleaned up))).

8

Criswell and Brown allege that Strong was deliberately indifferent to the risks posed by the COVID-19 pandemic. But in the early months of 2020, the risks of the COVID-19 virus were poorly understood. The nature of those risks and the appropriate means to manage them were uncertain, and these issues were particularly complicated in the prison context. But the Fifth Circuit has recognized that TDCJ took timely and appropriate steps to try to address the risks posed by the pandemic.

> In February of 2020, TDCJ first began discussions with Dr. Lanette Linthicum, Director of the Health Services Division for TDCJ, regarding a response to COVID-19. Also in February, the Correctional Managed Health Care Committee ("CMHCC"), composed of representatives from TDCJ, Texas Tech, and University of Texas Medical Branch ("UTMB"), began formulating Policy B-14.52—a comprehensive policy to manage COVID-19 in TDCJ facilities. The policy, which largely tracked the CDC guidance for detention centers, was adopted on March 20, 2020. The policy has been frequently updated and revised. In March, testing became available for symptomatic inmates. On May 12, 2020, TDCJ began to roll out "strike-team testing" for the Pack Unit and three other similarly situated prison facilities. Strike-team testing is TDCJ's mass testing protocol for all inmates that is included in the CDC's recommendations for mass testing for COVID-19 in nursing homes. Policy B-14.52 also instructs on quarantining and isolation both for inmates who test positive for the virus and those suspected of being infected with it.

*Valentine*, 993 F.3d at 278-79. In light of these facts, the Fifth Circuit concluded that TDCJ's response to the pandemic did not rise to the level required to show deliberate indifference. *Id.* at 283-84.

In her motion, Strong does not dispute that the COVID-19 virus presents a substantial risk of harm to inmates, nor does she dispute that she subjectively knew of the general risks presented by the virus. But she contends that her response to that risk was objectively reasonable. Neither Criswell nor Brown allege any facts to show that Strong failed to comply with the TDCJ policies adopted to address the COVID-19 pandemic or that she otherwise acted with deliberate disregard to their health and safety. To the extent that they contend that TDCJ's policies were inadequate to

9

deal with risks posed by the COVID-19 virus, general complaints that policies were inadequate to prevent harm—even if true—are not sufficient to establish a deliberate indifference claim. *See, e.g., Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008) (while jail's policies "lacked the specific directives Brumfield would have preferred to have been in place, policies nonetheless existed"). The fact that Criswell and Brown contracted the COVID-19 virus despite these policies does not, by itself, establish deliberate indifference. Criswell and Brown have failed to state a claim for deliberate indifference, and their claim on this basis is dismissed with prejudice for failure to state a claim.

### 2. Supervisory Liability Claim

Alternatively, Criswell and Brown appear to seek to hold Strong liable as a supervisor for the failure of certain subordinate prison officers to comply with TDCJ's COVID-19 policies. But under § 1983, supervisors cannot be held liable for the actions of others, including their subordinates. Personal involvement, not merely a supervisory role, is required. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). And while a supervisor may be personally liable for a failure to properly train employees, *see, e.g., Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998), Criswell and Brown do not allege any facts supporting a claim against Strong for a failure to train. Their claims based on supervisory liability are dismissed with prejudice for failure to state a claim.

### C. Qualified Immunity

Even if Criswell and Brown had alleged a viable claim that Strong violated their constitutional rights, the pleadings show that Strong is entitled to qualified immunity. Qualified immunity protects government officials from civil liability in their individual capacities to the extent that their conduct does not violate clearly established statutory or constitutional rights. *See*

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Garcia v. Blevins,* 957 F.3d 596, 600 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1058 (2021). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). Courts are free to decide which of the two elements to address first. *Ashcroft,* 563 U.S. at 735. "The plaintiff bears the burden of negating qualified immunity, . . . but all inferences are drawn in his favor." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (cleaned up).

To succeed on the second element of the qualified immunity analysis, the plaintiff must show that "the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (cleaned up). The Fifth Circuit has explained that this means that "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (cleaned up).

In the early months of 2020, information about the spread of the COVID-19 virus and how to address it in a crowded prison was new, uncertain, and evolving. TDCJ turned to, and relied on, the Correctional Managed Health Care Committee—as "the agency with healthcare expertise" and charged with "developing policies for all aspects of healthcare in correctional facilities"—to develop policies to respond to the COVID-19 pandemic. *Valentine*, 993 F.3d at 283. The legal obligation of an individual TDCJ warden to take steps to protect inmates against the COVID-19 virus separate and apart from, or in addition to, the measures developed by CMHCC and adopted

11

by TDCJ was far from clearly understood in March 2020, and the ability to provide protection was limited. Criswell and Brown seem to allege that Strong had obligations in addition to complying with TDCJ's policies, but they point to no clearly established law so holding. And because the facts do not show that "every like-situated, reasonable government agent" would know that what Strong was doing violated federal law under the circumstances of an unprecedented pandemic, the law governing Strong's conduct was not clearly established. Strong is entitled to qualified immunity, and the claims against her are dismissed with prejudice.

**IV.    Conclusion**

Warden Kelly Strong's motion to dismiss, (Docket Entry No. 40), is granted, and the complaint (Docket Entry No. 1), is dismissed with prejudice. Final judgment is separately entered.

SIGNED on May 26, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge